No. 92,141

In the Matter of JOHN C. KING, *Respondent.*
(98 P.3d 980)

Opinion filed October 15, 2004.

*Stanton A. Hazlett,* disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*John C. King,* respondent, did not appear.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against respondent John C. King, of Plano, Texas, an attorney admitted to the practice of law in Kansas.

## Disciplinary Panel's Findings of Fact and Conclusions of Law

A disciplinary panel of the Kansas Board for the Discipline of Attorneys conducted formal hearings, as required by Kansas Supreme Court Rule 211 (2003 Kan. Ct. R. Annot. 264), and considered evidence regarding King's conduct in handling matters for Randy and Ida Ford and Nga Nguyen. In its report, the panel concluded there was clear and convincing evidence King had violated Kansas Rules of Professional Conduct (KRPC) 1.15 (2003 Kan. Ct. R. Annot. 395) (safekeeping property); KRPC 8.4 (2003 Kan. Ct. R. Annot. 464) (misconduct); and Kansas Supreme Court Rule 207(b) (2003 Kan. Ct. R. Annot. 250). The panel unanimously recommended disbarment.

A summary of the panel's findings of fact and conclusions of law follows.

Randy and Ida Ford (the Fords) retained King to represent them before the Internal Revenue Service (IRS). Although the fee agreement was not reduced to writing, the Fords agreed to pay King an advance fee of $5,000. Following King's directions, on June 18, 1992, the Fords paid King with two checks. King deposited one check into his Intrust Bank trust account and the other into his operating account. The Fords also paid King $20,000 to be held in trust to pay the Fords' tax liability. At no time did the Fords agree that King or any attorney associated with King could use the $20,000 held in trust for attorney fees. Subsequently, the Fords

sent King additional funds which were deposited in King's trust account. King made some payments from the trust account on the Fords' behalf to various creditors. After King was unable to reach a compromise with the IRS, the Fords requested that King account for the money held in trust and return the balance. King failed to do so.

On July 1, 1992, King sent the Fords a statement of services for legal fees and expenses totaling $1,292.75. This was the last billing statement King sent the Fords.

On October 4, 1999, Ida Ford filed a complaint with the Disciplinary Administrator's office. The Disciplinary Administrator referred the case to the Southwest Kansas Ethics and Grievance Committee for investigation. An investigator was appointed who repeatedly requested a meeting with King and an accounting. King never met with the investigator and, although King provided copies of checks paid on the Fords' behalf, he never provided an accounting of the moneys paid by the Fords. At the time King filed his answer to the disciplinary complaint, he attached a billing summary regarding services rendered to the Fords. According to that billing summary, from February 10, 1993, through May 11, 1999, the Fords incurred attorney fees and expenses in the amount of $15,964.98.

The disciplinary panel noted that King frequently issued checks to his law firm in round amounts (*i.e.*, $1,000; $1,500; or $2,500), allegedly to cover the attorney fees. When the disciplinary panel compared the transfers from King's trust account to his operating account with the billing summary submitted on the Fords' matter, the amounts did not match.

Without determining whether King was entitled to use the money held in trust for his attorneys fees or whether King did in fact earn the fees described in the billing statements, the disciplinary panel found that King continues to owe the Fords at least $5,811.02 plus interest. The disciplinary panel noted that "it appears that the Respondent transferred fees from his trust account to his operating account when he needed funds to operate his law office."

The second complaint against King is similar. Nga Nguyen retained King to represent her in connection with an IRS matter. Again, the fee agreement was not reduced to writing, and King requested two checks, each in the amount of $2,250, as an advance fee. Nguyen complied, and King deposited one check into his operating account and one check into his Intrust Bank trust account. Nguyen also paid King $7,500 to be held in trust to be paid to the IRS to "stop the interest from running." Subsequently, Nguyen paid King additional fees. Nguyen paid King's firm a total of $8,192.50 for attorney fees. According to the billing summaries, King's firm earned $7,242.50 in legal fees. Thus, King owes Nguyen $950 in unearned fees. As of the date of the disciplinary panel report, King had not refunded the unearned fees to Nguyen.

After reaching an agreement with the IRS, Nguyen asked about the status of her $7,500 in trust. Eventually King acknowledged that Nguyen's money had not been paid to the IRS and should be in his trust account. However, he did not refund Nguyen's $7,500 until the first day of the disciplinary hearing on January 24, 2003. When King refunded Nguyen's $7,500, he did not pay any interest to Nguyen.

Combining the amounts owed to the Fords and Nguyen, King should have had at least $14,261.02 in his Intrust Bank trust account from August 1997 when Nguyen provided the $7,500. However, at five different times, including a period in excess of 1 year from January 14, 1999, until the account was closed, King failed to maintain sufficient funds in his Intrust Bank trust account to cover the amounts held in trust for the Fords and Nguyen. Additionally, according to King's records, King was holding amounts in trust for other clients. Therefore, the trust account balance should have exceeded the amounts held for the Fords and Nguyen.

The disciplinary panel, during the first day of hearing this matter, requested that King provide copies of four checks drawn on his Intrust Bank trust account. At the conclusion of the proceedings that day, King requested additional time to provide the disciplinary panel with a complete reconciliation of the Intrust Bank trust account. He stated unequivocally that 60 days would be sufficient. Based upon King's assurance that 60 days would be sufficient, the

disciplinary panel scheduled an additional hearing for April 24, 2003. The disciplinary panel ordered King to provide copies of four checks and a complete reconciliation of the Intrust Bank trust account to the Disciplinary Administrator and each member of the disciplinary panel by March 24, 2003.

King failed to comply with the disciplinary panel's order. The Disciplinary Administrator requested that the matter be rescheduled and that King again be ordered to provide certain items. The disciplinary panel granted the Disciplinary Administrator's request to continue the hearing, and on April 28, 2003, the disciplinary panel issued a written order compelling King to produce certain documents. Additionally, the Disciplinary Administrator served counsel for King with a subpoena requiring King to provide certain documents. King failed to comply with the disciplinary panel's order to produce documents or the subpoena.

On July 25, 2003, the disciplinary hearing resumed. At the outset of the hearing, King provided a reconciliation of the Intrust Bank trust account. During the hearing, King produced additional documents. However, he testified he could not locate other documents.

At the conclusion of the hearing, the disciplinary panel ordered King to provide some original checks and a complete copy of his Legacy Bank trust account records. King did not provide the documents as ordered. After the deadline had passed, the disciplinary panel's research attorney contacted counsel for King inquiring whether King would be providing any documentation as ordered by the disciplinary panel. The research attorney obtained counsel's permission to contact King directly. The research attorney spoke by telephone to King that same day. King acknowledged that he had not complied with the disciplinary panel's order, but he stated to the research attorney that he would send the information ordered to be produced by overnight mail. However, King did not do so. As of the date of the disciplinary panel's report, King had not provided the Legacy Bank trust account records or the requested checks.

In its final report, the disciplinary panel concluded that King violated KRPC 1.15(a) and KRPC 1.15(d)(1), which require law-

yers to deposit unearned fees into an appropriate trust account. While King deposited some checks into his Intrust Bank trust account on behalf of the Fords and Nguyen, the disciplinary panel concluded that King violated KRPC 1.15(a) and KRPC 1.15(d)(1) when he failed to deposit other checks received from both clients for advance fees into his trust account.

The disciplinary panel also found a violation of KRPC 1.15(b), which requires attorneys to account for property held in trust upon request. Beginning in 1995, the Fords began requesting that King account for the funds held in trust. Until King filed his answer on January 17, 2003, no accounting had been provided regarding the funds on deposit on behalf of the Fords. The disciplinary panel found that King never provided the Fords with a copy of the billing summary.

The disciplinary panel also found a violation of KRPC 1.15(d)(2)(iv), which requires that attorneys promptly return to a client funds to which the client is entitled. Beginning in September 1999, Nguyen requested the return of the $7,500 that King was holding in trust. King did not return Nguyen's $7,500 until January 24, 2003. Nguyen was likewise entitled to receive the $950 advance fee paid but not earned by King. The disciplinary panel noted that, as of the date of its final report, King had not returned to Nguyen the unearned $950 advance fee. The disciplinary panel also found that in 1995 and again in 1999 the Fords had requested that King return the funds held in trust for them. According to King's own testimony, the Fords are entitled to receive at least $6,280.03. As of the date of the disciplinary panel report, King had not returned any funds to the Fords. Because King failed to promptly return the funds which the Fords and Nguyen are entitled to receive, the disciplinary panel concluded that as to each client, King violated KRPC 1.15(d)(2)(iv).

The disciplinary panel also concluded that King's pattern of transferring funds from his Intrust Bank trust account to his operating account when he was not entitled to receive them was a violation of KRPC 8.4(c), which prohibits an attorney from engaging "in conduct involving dishonesty, fraud, deceit or misrepresentation."

Finally, the disciplinary panel concluded that King violated Supreme Court Rule 207(b), which requires an attorney, licensed to practice law in the State of Kansas, to cooperate in disciplinary investigations. Specifically, the disciplinary panel found that King failed to comply with the requests made by the disciplinary investigator. The disciplinary panel also concluded that King violated Supreme Court Rule 207(b) when he repeatedly failed to comply with the orders of the disciplinary panel and when he failed to comply with the subpoena issued by the Disciplinary Administrator's office.

*Disciplinary Panel's Recommendation Regarding Discipline*

In making its recommendation, the disciplinary panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (1991), specifically Standard 3. The first factor to be considered is the nature of the duty violated. In this case, the disciplinary panel found that King violated his duty to his clients to safeguard their property and account for moneys held in trust. King also violated his duty to the legal profession to cooperate in the disciplinary investigation. The panel concluded that King intentionally violated these duties.

Another factor to be considered under ABA Standard 3 is the potential or actual injury caused by the lawyer's misconduct. The disciplinary panel found:

"Between June, 1992, and August, 1992, the Fords provided the Respondent with $29,540.00. The Fords' tax matter remains unresolved. The Respondent converted the money to which they are entitled. The injury to the Fords is significant. The Respondent also caused significant injury to Mrs. Nguyen. The Respondent retained $7,500.00 of Mrs. Nguyen's money from September, 1999, until January, 2003, without any adequate explanation. In the meantime, Mrs. Nguyen had to pay the IRS the compromised amount agreed to without access to her money held in trust. Finally, the legal profession has suffered significant injury as a result of the Respondent's misconduct. The legal profession is tarnished whenever a lawyer converts clients' funds."

Additionally, the disciplinary panel found nine aggravating circumstances which are considerations or factors that may justify an increase in the degree of discipline to be imposed. First, the panel noted that King had been previously disciplined on three occasions.

On June 16, 1994, in B5672, the Disciplinary Administrator's office informally admonished King for having violated KRPC 1.3 (2003 Kan. Ct. R. Annot. 336) (diligence) and KRPC 1.4 (2003 Kan. Ct. R. Annot. 349) (communication). On December 15, 1998, in A6204, the Disciplinary Administrator's office informally admonished King for having violated KRPC 8.4 (2003 Kan. Ct. R. Annot. 464) (misconduct). On April 20, 2001, in DA7818, the Disciplinary Administrator's office informally admonished King for having violated KRPC 1.15 (2003 Kan. Ct. R. Annot. 395) (safekeeping property), and KRPC 1.16 (2003 Kan. Ct. R. Annot. 407) (declining or terminating representation).

Second, the disciplinary panel concluded that King's misconduct was motivated by dishonesty and selfishness. Third, the disciplinary panel found that King engaged in a pattern of misconduct in this case. The panel noted that during the second portion of the hearing King testified that he continues to owe numerous clients substantial amounts of money that he had previously held in trust. Specifically, the disciplinary panel noted that King's trust account records show that King owes 23 other clients $15,124.09 and has for a number of years. No evidence was submitted that showed that King made any attempt to reconcile his trust accounts and refund moneys held when he closed his Kansas practice.

The disciplinary panel concluded that a fourth aggravating factor was that King committed multiple offenses. Fifth, the panel found that King engaged in a bad faith obstruction of the disciplinary proceeding by repeatedly and intentionally failing to comply with the requests of the investigating attorneys and the orders of the disciplinary panel. Sixth, the disciplinary panel concluded that King submitted false or deceptive evidence during the disciplinary process in that his testimony was inconsistent, deceptive, and misleading. Other aggravating factors noted by the disciplinary panel were Nguyen's vulnerability to the misconduct due to her difficulty in communicating in English and King's indifference to making restitution. Finally, the disciplinary panel cited King's substantial experience in the practice of law, noting he was admitted to the Kansas bar in 1988 and was also admitted to the practice of law in the states of Illinois, New York, and Virginia.

The disciplinary panel also noted mitigating factors of personal or emotional problems which contributed to the violations and King's health problems. However, the disciplinary panel noted that King's medical problems occurred after the Fords and Nguyen requested refunds of their moneys. While the medical problems may have contributed to the difficulty in responding to the requests of the Disciplinary Administrator and the attorney assigned to investigate the complaints, the disciplinary panel concluded that King had sufficient time to properly cooperate.

After examining ABA Standards 4.11 and 4.12, the disciplinary panel adopted the Disciplinary Administrator's requested discipline and recommended disbarment, noting:

> "This case involves two separate and distinct forms of misconduct. First, the Respondent converted funds belonging to the Fords and Mrs. Nguyen. The Respondent had the benefit of their money for years. The Respondent has made no attempt to return any of the Fords' money and continues to retain unearned fees paid by Mrs. Nguyen. Second, the Respondent failed to cooperate with the disciplinary investigator, failed to comply with a lawful subpoena issued by the Disciplinary Administrator, and completely ignored numerous orders of the Hearing Panel during the pendency of the disciplinary case. Standing alone, the conversion of funds probably warrants disbarment. However, when the conversion is coupled with the intentional failure to cooperate with the disciplinary process, the ultimate sanction of disbarment is clearly warranted."

## Analysis of Disciplinary Panel's Conclusions

In disciplinary matters, this court must examine the evidence and determine the judgment to be entered. In doing so, the findings of fact, conclusions of law, and recommendations made by the disciplinary panel are advisory only, but they will be given the same dignity as a special verdict by a jury or the findings of a trial court. The disciplinary panel's report will be adopted where amply sustained by the evidence. See *In re Carson*, 252 Kan. 399, 406, 845 P.2d 47 (1993); *In re Farmer*, 242 Kan. 296, 299, 747 P.2d 97 (1987); *State v. Zeigler*, 217 Kan. 748, 755, 538 P.2d 643 (1975); *State v. Klassen*, 207 Kan. 414, 415, 485 P.2d 1295 (1971).

In this case, the disciplinary panel's conclusions are not disputed. King did not file exceptions to the final hearing report or a brief in this matter and is deemed to have conceded that the factual

findings stated in the hearing report are supported by the evidence. Supreme Court Rule 212(d) and (e)(4) (2003 Kan. Ct. R. Annot. 270).

We conclude the findings entered by the panel are established by the clear and convincing evidence presented, and we adopt the conclusions of the panel that King violated the following provisions: KRPC 1.15 (2003 Kan. Ct. R. Annot. 395); KRPC 8.4 (2003 Kan. Ct. R. Annot. 464); and Supreme Court Rule 207(b) (2003 Kan. Ct. R. Annot. 250).

Further, King, having been notified of these proceedings, failed to respond or appear before this court. This failure to appear constitutes a violation of Supreme Court Rule 212(d). Therefore, the court unanimously concludes that the disciplinary panel's recommended discipline of disbarment is warranted.

IT IS THEREFORE ORDERED that the respondent, John C. King, be and he is hereby disbarred from the practice of law in the State of Kansas in accordance with Supreme Court Rule 203(a)(1) (2003 Kan. Ct. R. Annot. 226) for his violations of the Kansas Rules of Professional Conduct and Supreme Court Rules.

IT IS FURTHER ORDERED that the Clerk of the Appellate Courts strike the name of John C. King from the roll of attorneys licensed to practice law in Kansas.

IT IS FURTHER ORDERED that John C. King comply with Supreme Court Rule 218 (2003 Kan. Ct. R. Annot. 286).

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of this action be assessed to respondent.